IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

Vs.                              No. 05-40087-01-SAC

JASON M. THOMAS,

        Defendant.

**Memorandum and Order**

This case comes before the court on the motion of defendant, Jason M. Thomas, to conduct a hearing pursuant to *Jackson v. Denno*, 378 U.S. 368 (1964), in which to determine the admissibility of statements he allegedly made. (Dk. 13). The government has responded that it is not opposed to having a hearing.

An evidentiary hearing was held October 13, 2005, at which time the court heard the testimony of one witness for the government. No further evidence was presented. Thereafter, the parties decided to submit the case on the briefs. The briefs do not clarify whether defendant is claiming a *Miranda* violation or

merely challenging the voluntariness of his statements.

**Facts**

On April 7, 2005, at approximately 8:00 p.m., Officer George Henley of the Topeka Police Department was one of many officers involved in the pursuit of a red Dodge Stratus.  Defendant, the driver of that vehicle, was reportedly armed with an AK-47 rifle.  The pursuit began in Shawnee County and ended in Jackson County on the Pottawatomie Indian Reservation where the defendant stopped the vehicle in a field and traveled on foot into the woods.  According to the information conveyed to Officer Henley from the police helicopter which assisted in the pursuit, defendant was armed when he went into the woods.

After an undisclosed period of time, defendant emerged from the woods unarmed, and was arrested by Officer Henley.  Officer Henley testified that during that initial encounter, defendant was "verbally aggressive," and made statements such as, "You have no business trying to stop me," "You've got no business on the reservation," and "Why was I stopped?"  Officer Henley testified that he made no attempt to question defendant then, or at any time after his arrest.

Defendant was placed in Officer Henley's patrol car, where radio traffic and law enforcement officer's conversations could be overheard.  Officer Henley remained outside his patrol car while other officers searched for the firearm.

At one point radio traffic reported that the last view of the defendant with the firearm had been in the woods near a creek bed. Defendant then stated to Officer Henley, "I threw the rifle in a pond."[1] Officer Henley testified that he never asked defendant where the firearm was, or made any attempt to solicit any response from defendant.

After approximately twenty to thirty minutes, Officer Henley asked Jackson County officers if he could follow them back to the main road because he was not familiar with the area. Defendant then offered to give Officer Henley directions. During the ride to the jail, which took another twenty minutes, defendant stated several times, "The only reason I didn't stop was because I had a gun." Defendant also asked what would happen to him, and the officer informed him of the upcoming procedure. Officer Henley testified that during the time he transported defendant to jail, he never asked defendant about himself, the chase, the firearm, or any questions whatsoever.

At the police department, Officer Henley took defendant to an interview room where Detective Biggs attempted to interview defendant. Although the testimony is not clear on this point, the record gives rise to an inference that

---

[1] The rifle was later found in the creek near the area where officers in the helicopter had last seen defendant with it.

defendant was Mirandized by Det. Biggs for the first time that evening.[2]  When defendant declined to speak to Det. Biggs, the interview was terminated.

At the time of the pursuit and arrest, Officer Henley was unaware of defendant's prior criminal record.  By the date of the evidentiary hearing, Officer Henley had become aware of it, and agreed with counsel on cross-examination that a person with prior criminal justice experience may be assumed to know that their statements could be used against them.

Officer Henley had further contact with defendant in August, 2005.  On August 12, Officer Henley saw defendant driving.  Officer Henley knew defendant had a suspended driver's license, so stopped defendant and issued him a citation for that violation.[3]  His check to determine whether defendant had outstanding warrants was negative.

The following day, after learning that a federal warrant had recently been issued for defendant, Officer Henley went to defendant's residence to serve the warrant.  Upon learning that Officer Henley had a warrant for his arrest, defendant stated, "I thought I had some time to take care of that."  Officer Henley

---

[2]Officer Henley testified that he never Mirandized defendant, but agreed with defense counsel on cross examination that once defendant was Mirandized, defendant invoked his rights.

[3]Officer Henley did not state why defendant was not taken to jail.

then explained that the warrant was not for the recent traffic offense, but for the previous firearm offense. Officer Henley testified that after defendant was taken into custody defendant said, "I'll just do my five years." Officer Henley testified that during his contacts with defendant in August, he never Mirandized defendant or asked him any questions or otherwise solicited any statements whatsoever.

**General law**

> Section 3501(a) provides:
>
> In any criminal prosecution brought by the United States ... a confession ... shall be admissible in evidence if it is voluntarily given. Before such confession is received in evidence, the trial judge shall, out of the presence of the jury, determine any issue as to voluntariness. If the trial judge determines that the confession was voluntarily made it shall be admitted in evidence and the trial judge shall permit the jury to hear relevant evidence on the issue of voluntariness and shall instruct the jury to give such weight to the confession as the jury feels it deserves under all the circumstances.

18 U.S.C. § 3501(a). This section codifies the constitutional requirement for a hearing on the voluntariness of a defendant's confession announced by the Supreme Court in *Jackson v. Denno*, 378 U.S. 368 (1964).

Defendant's statement to Officer Henley about the location of the gun is sufficient to constitute a "confession," as that term is defined, warranting this hearing. *See* 18 U.S.C. § 3501(e) (defining a confession as "any confession of guilt of any criminal offense or any self-incriminating statement made or given orally or

in writing.")

### Miranda warnings

In an abundance of caution, the court presumes that defendant intends to raise a *Miranda* challenge.[4]

In *Miranda v. Arizona*, 384 U.S. 436, 444 (1966), the Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." There are two requirements that trigger *Miranda*: (1) "the suspect must be in 'custody,' and [ (2) ] the questioning must meet the legal definition of 'interrogation.' " *United States v. Ritchie*, 35 F.3d 1477, 1484 (10th Cir.1994) (quoting *United States v. Perdue*, 8 F.3d 1455, 1463 (10th Cir.1993))....

For purposes of *Miranda*, interrogation "refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980). It is said that "*Miranda* applies only if an individual is subject to 'either express questioning or its functional equivalent.' " *United States v. Davis*, 40 F.3d 1069, 1078 (10th Cir. 1994) (quoting *Rhode Island v. Innis*, 446 U.S. at 300-01), *cert. denied*, 514 U.S. 1088 (1995).

"Volunteered statements of any kind are not barred by the Fifth Amendment." *Miranda*, 384 U.S. at 478. Thus, absent a showing of coercion or other misconduct by law enforcement, an arrestee's volunteered statements made before receiving the *Miranda* warning may be used against him. *Rhode Island v. Innis*, 446 U.S. at 300-02. "If a person voluntarily speaks without interrogation by an officer, the Fifth Amendment's protection is not at issue, and the statements are admissible." *United States v. Muniz*, 1

---

[4] In the future, the court suggest to counsel that the basis for a *Jackson v. Denno* challenge be clarified in the briefs or oral argument.

F.3d 1018, 1022 (10th Cir.), *cert denied*, 510 U.S. 1002 (1993).

*United States v. Delay*,  2003 WL 22327117, *8 (D. Kan. 2003).

### Voluntariness

Absent allegations of a *Miranda* violation, the court must still determine the voluntariness of defendant's statements.

> Even when a defendant's *Miranda* rights are not violated, the court must still conduct a Fifth Amendment inquiry into the voluntariness of any statements. *United States v. Roman-Zarate*, 115 F.3d 778, 783 (10th Cir. 1997). The court looks to the totality of the circumstances in determining whether the statements were voluntary. *United States v. Glover*, 104 F.3d 1570, 1579 (10th Cir. 1997). In considering whether a statement is of free will, the courts look to several factors, including: "(1) the characteristics of the defendant: age, education, intelligence, and physical and emotional attributes; (2) the circumstances surrounding the statement, including the length of detention and questioning and the location of questioning; and (3) the tactics, if any, employed by officers. (citations omitted). In no case, however, is any single factor determinative." *United States v. Chalan*, 812 F.2d 1302, 1307 (10th Cir. 1987), *cert. denied*, 488 U.S. 983 (1988). Coercive police activity is a necessary predicate to a finding that a confession is not voluntary within the meaning of the due process clause. *See Colorado v. Connelly*, 479 U.S. 157, 167 (1986).

*United States v. Delay*,  2003 WL 22327117, *9 (D. Kan. 2003).

### Analysis

The court finds Officer Henley's testimony to be uncontradicted and credible. His testimony is sufficient to show that he neither expressly questioned defendant, nor engaged in the functional equivalent of questioning. No evidence of

7

pre-Miranda interrogation, coercion or wrongdoing on the part of Officer Henley or other officers was presented. Officer Henley's testimony of his interactions with defendant show that defendant was of sufficient age, education, intelligence, and physical and emotional attributes to choose to speak or to remain silent. Neither the circumstances surrounding defendant's statements, nor any tactics employed by officers support a finding of involuntariness.

The fact that defendant invoked his right to remain silent after being advised of his Miranda rights is not sufficient, by itself, to defeat the government's showing that his previous statements were made voluntarily. Based on the sole evidence presented, the court finds that defendant's *Miranda* rights were not violated and that defendant's statements were made voluntarily.

IT IS THEREFORE ORDERED that defendant's motion to conduct a hearing (Dk. 13) is granted and defendant's statements are found to be admissible.

Dated this 19th day of October, 2005, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge